**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIMOTHY BROKING, on behalf of himself and all others similarly situated, | : : : : |
| Plaintiff, | : : |
| v. | : : |
| GREEN BROOK BUICK GMG SUZUKI and BLUE BONNET TECHNOLOGY, LLC, | : : : |
| Defendants, | : : |
| and | : : |
| GREEN BROOK BUICK GMG SUZUKI, Defendant/Third-Party Plaintiff, | : : : |
| v. | : : |
| BLUE BONNET TECHNOLOGY, LLC, Third-Party Defendant. | : : : |

Civil Action No. 15-1847 (BRM)(LHG)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Defendant Green Brook Buick GMC, Inc. d/b/a Green Brook Mitsubishi's ("Green Brook") Motion for Summary Judgment (ECF No. 60), Plaintiff Timothy Broking's ("Plaintiff" or "Broking") Motion for Summary Judgment (ECF No. 63) and Motion to Certify Class (ECF No. 66), and Defendant Blue Bonnet Technology, LLC's ("Blue Bonnet") Motion for Summary Judgment (ECF No. 61).[1] Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on August 1, 2017. For the reasons set forth below, Green Brook's

---

[1] While Blue Bonnet does not join Green Brook's Motion, the issue of liability under the TCPA applies to both parties insofar as neither would be liable to Plaintiff if no TCPA violation occurred.

1

Motion for Summary Judgment is **GRANTED**; Broking's Motion for Summary Judgment is **DENIED**; Broking's Motion to Certify Class is **DENIED AS MOOT**; and Blue Bonnet's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

I. **FACTUAL BACKGROUND**

In this action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), Plaintiff asserts claims against Defendants Green Brook and Blue Bonnet (collectively, "Defendants") for alleged violations of the TCPA. The case arises from one automated call made to Plaintiff's residence on December 15, 2014. The full content of the pre-recorded phone call was:

> This is Green Brook Mitsubishi calling regarding your last service visit. Please press 1 to speak to Mr. Gates or call us at 732-653-9500 and ask for Mr. Gates. You may press 9 to be removed from this calling list. Thanks and have a great rest of your day from all of us here at Green Brook Mitsubishi.

(Green Brook Br. (ECF No. 60-3) at 4-5.)[2]

**A. Green Brook and Blue Bonnet**

Green Brook hired Blue Bonnet to conduct a robocall campaign (the "Campaign") in December 2014. (Green Brook's Sec. Am. Ans. (ECF No. 55) at 15 and Blue Bonnet's Br. (ECF No. 62) at 2 ¶ 4.)[3] Peter Posterino ("Posterino"), a sales manager for Green Brook, had a longstanding relationship with Blue Bonnet and its principals and contacted them to arrange the logistics of the Campaign. (ECF No. 60-3 at 6 ¶¶ 18-19.) On December 3, 2014, Posterino signed

---

[2] The parties were not aware of the content of the call until after Green Brook answered interrogatories and all depositions took place. (Green Brook Reply (ECF No. 88) at 4.)

[3] The parties dispute the nature of the Campaign, as Plaintiff and Blue Bonnet characterize it as a marketing/sales campaign (ECF No. 62 at 2 ¶ 4 and Broking Statement of Material Facts (ECF No. 65) at 4 ¶ 8), while Green Brook contends the Campaign was "not for telemarketing purposes" as the content of the call was to determine customer satisfaction with service visits (Green Brook Opp. (ECF No. 77) at 3 ¶ 4).

2

a hold harmless agreement (the "Hold Harmless Agreement"), which stated Green Brook would indemnify Blue Bonnet for all reasonable costs and expenses that arose from any claim related to the Campaign. (ECF No. 62-1.) Green Brook's owner and president, David Ferraez ("Ferraez"), testified the agreement Posterino signed was not valid because only Ferraez had authority to sign contracts on Green Brook's behalf and that he never saw nor was he aware of the Hold Harmless Agreement until after this litigation began. (ECF No. 77 at 27:4-11, 46:13-47:12.)

Green Brook paid Blue Bonnet $10,000 for, *inter alia*, three days of phone calls, a "7000 piece mailer to be [sent] the week of 12/08/2014," and the provision of two Blue Bonnet staff members for two of the three days of the phone portion of the Campaign. (Invoice #2115 (ECF No. 60-11).) Green Brook provided Blue Bonnet with a customer list that contained the phone numbers used in the Campaign. (ECF No. 62 at 2 ¶ 5 and ECF No. 77 at 3 ¶ 5.) During the course of the Campaign, 4739 calls were made from Green Brook's dealership site. (ECF No. 60-3 at 7 ¶ 22, ECF No. 62 at 3 ¶ 7, ECF No. 77 at 3-4 ¶ 7, and Broking Statement of Material Facts in Opp. (ECF No. 80) at 6 ¶ 22.) The Parties stipulate Green Brook used an automatic telephone dialing system ("ATDS") during the Campaign. (ECF No. 62 at 3 ¶ 9, ECF No. 65 at 4 ¶ 6, and Green Brook Opp. (ECF No. 75) at 3 ¶ 6.)

**B. Green Brook's Call to Plaintiff**

Plaintiff alleges in his Amended Complaint that he "received numerous automated telephone calls to his residential phone number" related to the Campaign (ECF No. 24 ¶ 12), though he later testified at his deposition that he received one. (ECF No. 65 at 4 ¶ 8 and ECF No. 80 at 3 ¶ 7.) He pled the "purpose of the calls was to persuade [him] to buy a car from Green Brook" (ECF No. 24 ¶ 12) but later testified he could not recall the content of the one call he received. (ECF No. 60-7 at 55:16-56:17 and ECF No. 80 at 4 ¶ 10.) He also pled he had no prior

3

business relationship with Green Brook or Blue Bonnet (ECF No. 24), but at his deposition he testified his car was serviced for approximately thirty days at Green Book after an accident at the recommendation of his insurer. (ECF No. 65 at 3 ¶¶ 3-5 and ECF No. 80 at 2-3 ¶¶ 2-4.) The service to Plaintiff's vehicle took place between 2011 and December 14, 2014. (ECF No. 60-7 at 20:22-25.). While Green Brook was servicing Plaintiff's car, Plaintiff called Green Brook at least two times to inquire about the status of the repairs. (*Id.* at 33:2-5.)

Plaintiff received the phone call giving rise to this lawsuit on December 15, 2014, at 3:03 p.m. (ECF No. 65 at 4 ¶ 8 and ECF No. 80 at 3 ¶ 7.) Plaintiff's residential phone number is, and was at the time of the calls, registered on the national "Do Not Call" Registry. (ECF No. 24 ¶ 18.) He answered the phone after one or two rings but could not recall the content of the phone call at his deposition. (ECF No. 60-3 at 4 ¶ 11 and ECF No. 80 at 4 ¶ 10.) Through discovery, it was revealed Plaintiff and Green Brook were not aware of the full content of the pre-recorded message until after Green Brook answered interrogatories and all depositions were taken. (ECF No. 88 at 4-5.)

Plaintiff testified he called the number on his caller ID device three times to determine who had placed the call. (ECF No. 60-3 at 5 ¶ 14 and ECF No. 80 at 5 ¶ 13.) Plaintiff reached someone at Green Brook on his third attempt, and he told the person, "I've never done any business with your company. How did you get my number?" (ECF No. 60-3 at 5 ¶ 15 and ECF No. 80 at 5 ¶ 14.) The Green Brook employee apologized, and Green Brook made no further calls to Plaintiff nor had any additional contact with him. (ECF No. 60-3 at 5-6 ¶¶ 15-16 and ECF No. 80 at 5 ¶¶ 14-5.)

## II. PROCEDURAL BACKGROUND

On March 12, 2015, Plaintiff filed his Complaint in this action. (ECF No. 1.) Green Brook filed a motion to dismiss the Complaint (ECF No. 4), which this Court denied (ECF No. 13).[4] Plaintiff filed the Amended Complaint on January 7, 2016. (ECF No. 24.) Plaintiff asserts claims against both Green Brook and Blue Bonnet and against each pleaded in the alternative on behalf of himself and a putative class made up of the recipients of 4,108 calls completed during the call campaign. (ECF No. 24 and Broking Br. (ECF No. 64) at 2-3.) Plaintiff seeks damages of $6,685,000.00, calculated as $1,500.00—the statutory amount permitted for each willful violation—multiplied by 4457 calls attempted during the Campaign. (ECF No. 64 at 2-3 (citing 47 U.S.C. § 227(b)(3).)

Green Brook filed a Crossclaim against Blue Bonnet, alleging Blue Bonnet is liable for any injury to Plaintiff and asserts claims against Blue Bonnet for: negligence (Counts I and II); negligent or intentional misrepresentation (Count III); breach of contract (Count IV); and indemnification (Count V). (ECF No. 55 at 15-20.) Blue Bonnet likewise filed a Crossclaim, arguing: Green Brook is liable for: breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and seeking declaratory relief (Count III). (ECF No. 28 at 8-10.)

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[4] The Honorable Michael A. Shipp, U.S.D.J. issued the order denying Green Brook's motion to dismiss. The case was later reassigned to the undersigned. (ECF No. 40.)

5

of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475

6

U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**IV. DECISION**

Congress enacted the TCPA "to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). The TCPA prohibits a party from using an ATDS "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," unless the call falls within one of the statute's enumerated exemptions. 47 U.S.C. § 227(b)(1)(B). The exemptions include "calls that are not made for a commercial purpose" and commercial calls that "do not include the transmission of any unsolicited advertisement." 47 U.S.C. § 227(b)(2)(B).

"[A]utodialed calls—to both cellular phones and land-lines—are lawful so long as the recipient has granted permission to be called at the number which they have given, *absent instructions to the contrary*." *Gager*, 727 F.3d at 268 (citations omitted). Pursuant to the statute,

7

an ATDS means "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Further, the TCPA creates a private cause of action by allowing a "person or entity" to bring a private right of action to enjoin violators of the TCPA and "recover for actual monetary loss from such a violation, to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3).

Before turning to the parties' respective motions, the Court notes the Amended Complaint is replete with inaccuracies. Plaintiff claimed he received several calls (ECF No. 24 ¶ 12) before he ultimately admitted he received one. (ECF No. 65 at 4 ¶ 8 and ECF No. 80 at 3 ¶ 7.) He claimed the call encouraged him to buy a car (ECF No. 24 ¶ 12) though later testified he could not remember what the call said. (ECF No. 60-7 at 55:16-56:17 and ECF No. 80 at 4 ¶ 10.) He alleged he had no prior dealings with Green Brook (ECF No. 24) before he admitted his car was serviced there for nearly a month. (ECF No. 65 at 3 ¶¶ 3-5 and ECF No. 80 at 2-3 ¶¶ 2-4.) Plaintiff emphasizes Green Brook's interrogatory responses, which stated the Campaign was a marketing effort, despite the fact Green Brook responded to interrogatories without the benefit of knowing the content of the call. (ECF No. 79 at 2 n.4). Yet, Plaintiff offers no explanation for the ways discovery served to discredit many aspects of his claims. The Court cannot fathom Congress intended, in enacting the TCPA, to create a cause of action in a case such as this, where a plaintiff's account of an alleged violation was shown to be inaccurate in many respects. Nevertheless, the Court examines the Motions against the current legal landscape of TCPA cases.

**A. Green Brook's Motion**

Green Brook makes three arguments in support of its motion. First, Green Brook argues the recorded call did not violate the TCPA, because it was not an advertisement or a telemarketing message. Second, Green Brook argues it is exempt from liability pursuant to 47 U.S.C. § 227(a)(4)(B), because Plaintiff and all other recipients of the call had an established business relationship with Green Brook. Third, Green Brook argues that, because Plaintiff received only one call, he has not sustained a particularized injury to have standing to assert a TCPA claim under the Supreme Court's precedent in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).[5]

**1. Whether the Robocall Constituted "Telemarketing"**

Green Brook argues the phone call to Plaintiff does not violate the TCPA, because the call did not constitute telemarketing. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Green Brook argues the content of the call, which explicitly told recipients was "regarding [their] last service visit," did not include any mention of purchasing, renting, or investing in property, goods, or, or services. (ECF No. 60-3 at 12 (citing 47 C.F.R. § 64.1200(f)(12)).)

Plaintiff counters that a call's purpose, not only its content, determines whether the call constitutes telemarketing. (ECF No. 79 at 3 (citing 47 C.F.R. § 64.1200(f)(11)-(12)).) He cites the testimony of Postorino, the former Green Brook employee, who stated the purpose of the

---

[5] While these motions were pending, the Third Circuit held a plaintiff who received a single call to her cell phone had "alleged a concrete, albeit intangible, harm" and established Article III standing to assert a TCPA claim. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017) (citing *Spokeo*, 136 S. Ct. at 1549). Plaintiff and Green Brook supplemented their papers arguing the extent to which *Susinno* applies in this case. (ECF Nos. 96 and 97.)

9

Campaign was to reach customers and inform them about offers to purchase cars. (ECF No. 83-2 at 89:9-25.) Plaintiff cites Green Brook's interrogatory response in which it stated the Campaign's purpose was "to invite past . . . customers to purchase a vehicle." (ECF No. 68-5 at 7 ¶ 11.)[6] Plaintiff also notes Blue Bonnet has stipulated to the fact that the Campaign was a marketing effort. (ECF No. 62 at 2-3 ¶¶ 4, 6.) Plaintiff argues this Court should consider the call he received in light of Green Brook's overall efforts to reach customers. (ECF No. 79 at 3-4 (citing *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. 12-2132 FLW-TJB, 2015 WL 3827579, at *4 (D.N.J. June 19, 2015), *reconsideration denied*, No. 12-2132 FLW-TJB, 2015 WL 5164821 (D.N.J. Sept. 2, 2015).)

This Court finds Green Brook's robocall did not constitute telemarketing—even under the Ninth Circuit's more expansive standard, which Plaintiff asks the Court to apply.[7] The Ninth Circuit held "explicit mention of a good, product, or service [is not necessary] where the implication is clear from the context" that a message constitutes telemarketing. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). On the other hand, "messages 'whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements.'" *Aderhold v. car2go N.A. LLC*, 668

---

[6] The Court notes Ferraez testified he did not know the content of the robocall at the time of the Campaign, and, as noted above, Green Brook was unaware of the language of the robocall until after it answered interrogatories and all depositions were taken. (ECF No. 88 at 4-5.)

[7] The Third Circuit has yet to decide "whether a Court should indeed look beyond the four corners of a fax's contents and examine other potentially relevant facts in its determination as to whether a particular fax indeed constitutes an advertisement." *Physicians Healthsource, Inc.*, 2015 WL 3827579, at *4. While this case stems from a robocall, not a fax, the Court finds the two types of communication are analogous. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 106 (3d Cir. 2011), *opinion reinstated in part*, No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012) (recognizing the TCPA was enacted to curb both unsolicited faxes and telephone calls).

F. App'x 795, 796 (9th Cir. 2016) (quoting *In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006)).

Here, the purpose of the robocall was to complete or confirm Plaintiff's satisfaction with his service visit. *See P&S Printing LLC v. Tubelite, Inc.*, No. 14-1441, 2015 WL 4425793, at *5 (D. Conn. July 17, 2015) (finding a fax was not an advertisement when its primary purpose was to communicate with customers rather than solicit goods). Plaintiff emphasizes the fact that Green Brook's former employee and Blue Bonnet claimed the purpose of the Campaign was ultimately to sell more cars to former customers. This purpose is too attenuated from the robocall, however, to render the robocall a telemarketing message. *See Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1067-68 (C.D. Cal. 2017) (holding a business's "overarching incentive to retain customers" is not enough to "transform" a communication into telemarketing). Green Brook may have been motivated by a desire to cultivate goodwill with former customers through the robocall, but such a broad view of a business's aims "would transform practically *all* communication from any entity that is financially motivated and exchanges goods or services for money into telemarketing or advertising, which would contravene the delineated definitions of telemarking and advertising in 47 C.F.R. § 64.1200(f)(10, (12)." *Id.* at 1068.

The Court finds, therefore, Green Brook's robocall did not constitute telemarketing and did not violate the TCPA.

**2. The Established Business Rule and Consent**

"[T]he TCPA does not apply if calls are made to customers with whom the caller has an Established Business Relationship." *Zelma v. Art Conway*, No. 12-00256, 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013). An established business relationship is

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential

11

> subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5); *Zelma*, No. 12-00256, 2013 WL 6498548, at *2. Here, Plaintiff testified in his deposition that he had his car repaired at Green Book in 2011. (ECF No. 60-7 at 19:10-20:21.) Plaintiff's car was serviced at Green Brook for approximately thirty days, and Plaintiff testified he called Green Brook several times during that time. (*Id.* at 22:19-21, 31:12-14, 32:7-15.)

Plaintiff argues the established business relationship exception does not apply, because the exception was eliminated effective October 16, 2013. (ECF No. 79 at 5.) The Court agrees. *See In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1837 (2012) ("[W]e eliminate the 'established business relationship exemption as it previously applied to telemarketing robocalls to residential lines."). Green Brook cites the definition of established business relationship at 47 U.S.C. § 227(a)(4)(b) in arguing the exception applies to the Campaign (ECF No. 60-3 at 11), but the statute applies the exception only to subsection (b)(1)(C)(i), which governs unsolicited advertisements made to a "facsimile machine." *See* 47 U.S.C. § 227(b)(1)(C)(i). Here, the contact at issue was a telephone robocall, not a fax. The Court finds, therefore, the established business relationship does not apply.

The established business relationship is not the only exception in the TCPA. The TCPA does not prohibit telephone robocalls made "with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). Plaintiff argues there was no consent in this matter, because Green Brook did not obtain "prior express *written* consent." (ECF No. 64 at 6-7 (citing 47 C.F.R. § 64.1200(a)(2)) (emphasis added).) Green Brook does not dispute that Plaintiff did not give prior

express written consent. (*Id.* at 7-8.) The TCPA requires written consent for calls that constitute telemarketing. 47 C.F.R. § 64.1200(a)(2). As the Court has found Green Brook's robocall did not constitute telemarketing, written consent was not required.

Instead, Green Brook needed only to obtain the "prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(A). This Court has interpreted the consent requirement to be met when a plaintiff knowingly released his phone number. *See Chisholm v. AFNI, Inc.*, No. 15-3625, 2016 WL 6901358, at *5 (D.N.J. Nov. 22, 2016) ("Under the TCPA, 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'" (quoting Rules and Regulations Implemented the Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8769 (1992))). Plaintiff provided Green Brook with his phone number when Green Brook was repairing his car, and he never gave instructions not to call him. *See Gager*, 727 F.3d at 268-69, 271 (recognizing a party consents to be called at a number provided to a business absent express revocation of that consent). Once Plaintiff called to complain about the call he received, a Green Brook employee apologized and Green Brook made no further calls to Plaintiff nor had any additional contact with him. (ECF No. 60-3 at 5-6 ¶¶ 15-16 and ECF No. 80 at 5 ¶¶ 14-5.)

The Court finds Plaintiff consented to be called at the phone number he provided to Green Brook, and the robocall did not violate the TCPA.

   **3.**  ***Spokeo* and Plaintiff's Standing to Assert a Claim**

The Court cannot grant Green Brook's Motion until it addresses the issue of Plaintiff's standing to assert his claims. Green Brook argues Plaintiff has not suffered a particularized injury that grants him Article III standing under the Supreme Court's decision in *Spokeo*. Green Brook acknowledges the Third Circuit's decision in *Susinno* but argues, while one call is sufficient injury

13

to confer standing and survive a motion to dismiss, one call is not sufficient to establish a particularized injury as a matter of law. (ECF No. 97 at 6.) Green Brook reiterated at oral argument that Plaintiff must demonstrate a particularized injury in order to satisfy the standing requirements of *Spokeo* and argued he cannot do so as a matter of law.

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560(1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id.* at 1547 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'"). "Concreteness, therefore, is quite different from particularization." *Id.*

Here, Plaintiff has presented sufficient evidence that could allow a reasonable jury to conclude he suffered a particularized and concrete injury. First, a reasonable jury could conclude

an unwanted call constitutes a particularized injury in a TCPA case insofar as such a call creates a nuisance or invades a plaintiff's privacy. *See Smith*, 228 F. Supp. 3d at 1063 (denying defendant's summary judgment on issue of standing because invasion of privacy is a particularized injury); *Nghiem v. Dick's Sporting Goods, Inc.*, 222 F. Supp. 3d 805, 811 (C.D. Cal. 2016) (invasion of privacy is a concrete and particularized injury); *Mey v. Venture Data, LLC*, No. 14-123, 2017 WL 1193072, at *8 (N.D. W. Va. Mar. 29, 2017) (denying defendant's summary judgment motion where alleged invasion of plaintiff's privacy was a particularized and concrete harm); *see also Physician's Healthsource, Inc. v. Vertex Pharm. Inc.*, No. 15-11517 JCB, 2017 WL 1534221, at *8 (D. Mass. Mar. 28, 2017) (finding unwanted fax created particularized injury by occupying plaintiff's fax machine).

The Third Circuit applied the two-part test established in *In re Horizon Healthcare Inc. Data Breach Litig.*, 846 F.3d 635 (3d Cir. 2017) to hold a single call can give rise to sufficiently concrete injury to satisfy the standing requirements of *Spokeo*. *Susinno*, 862 F.3d at 351. It stated:

> We summarize *Horizon*'s rule as follows. When one sues under a statute alleging [1] "the very injury [the statute] is intended to prevent," and [2] the injury "has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts," a concrete injury has been pleaded. We do not, and need not, conclude that intangible injuries falling short of this standard are never concrete. Rather, we simply observe that all intangible injuries that meet this standard *are* concrete.

*Id.* (citations omitted). The Third Circuit reasoned one unwanted communication is a concrete injury under the first prong, because Congress enacted the TCPA precisely to address the injury caused by unwanted calls. *Id.* The second prong is satisfied, because the TCPA's protection from the injury of one call has a close relationship to the common law protection of plaintiffs' privacy rights. *Id.* at 352.

In light of the Third Circuit's ruling, the Court finds a reasonable jury could conclude Plaintiff sustained a concrete injury and therefore has Article III standing. The Court finds, though, Green Brook did not violate the TCPA, because the one call to Plaintiff was not telemarketing. Therefore, Green Brooks Motion for Summary Judgment (ECF No. 60) is **GRANTED**.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff argues there is no genuine dispute of material fact that Green Brook, or in the alternative Blue Bonnet, violated the TCPA. (*See* ECF No. 64.) As in his opposition to Green Brook's motion, Plaintiff argues a call's purpose, not only its content, determines whether the call constitutes telemarketing. (*Id.* at 8-9.) Plaintiff cites Green Brook's interrogatory responses stating Green Brook hoped former customers would purchase cars, but as noted above, Ferraez testified he did not know the content of the robocall and Green Brook was unaware of the language of the robocall until after it answered interrogatories and all depositions were taken. (ECF No. 88 at 4-5.) Further, even if the Court were to assume Green Brook's goal was to cultivate goodwill with former customers, that purpose is too attenuated from the robocall to render the robocall a telemarketing message. *See Smith*, 228 F. Supp. 3d at 1067-68 (holding a business' "overarching incentive to retain customers" is not enough to "transform" a communication into telemarketing).

Because the Court finds Green Brook's robocall did not constitute telemarketing and no violation of the TCPA took place, Plaintiff's Motion for Summary Judgment (ECF No. 63) is **DENIED**.

### C. Plaintiff's Motion for Class Certification

At oral argument, Plaintiff acknowledged if there was no violation as to Plaintiff, there could be no violation as to any recipient of the robocall. As there was no violation of the TCPA, Plaintiff's Motion for Class Certification (ECF No. 66) is **DENIED AS MOOT**.

### D. Blue Bonnet's Motion

Blue Bonnet makes two arguments in support of its motion. First, Blue Bonnet argues it cannot be liable under the TCPA, because it is a common carrier and was not the "maker or initiator" of the calls. (ECF No. 62 at 4-5.) Second, Blue Bonnet argues Green Brook is bound by the Hold Harmless Agreement, which would shield Blue Bonnet from liability and entitle it to reimbursement of the cost of defending itself from Plaintiff's claims. (*Id.* at 7-8.)

Because the Court has concluded that Green Brook is not liable for any damages to Plaintiff, as there was no violation of the TCPA, Blue Bonnet is likewise not liable, and Blue Bonnet's Motion as to its liability under the TCPA is **GRANTED**. While Blue Bonnet did not move for summary judgment on the ground that the robocall did not constitute telemarketing, Plaintiff was aware of Green Brook's assertion of that argument and he presented an opposing argument. Plaintiff therefore suffers no prejudice through the Court's grant of summary judgment to Blue Bonnet on the same ground.[8]

The Court declines to analyze Blue Bonnet's argument it cannot be liable under the TCPA as a common carrier. Green Brook and Blue Bonnet have asserted contractual crossclaims against each other for damages arising from the defense of Plaintiff's claims. The Court therefore considers Blue Bonnet's argument concerning the Hold Harmless agreement.

---

[8] The Third Circuit has held a court can *sua sponte* grant summary judgment as long as "(1) the point at issue is purely legal; (2) the record was fully developed, and (3) the failure to give notice does not prejudice the party . . . ." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 219 (3d Cir. 2004). While the grant of summary judgment to Blue Bonnet on a ground Blue Bonnet did not argue is not a *sua sponte* grant of summary judgment, the Court takes note of the factors provided by the *Gibson* court.

### 1. The Hold Harmless Agreement

Blue Bonnet and Green Brook dispute the extent to which the Hold Harmless Agreement the two parties signed is binding. Ferraez testified he never saw the Hold Harmless Agreement until after this lawsuit was filed, and he believes it was created after the fact. (ECF No. at 11-12.) Postorino, Green Brook's former employee, testified he signed the Hold Harmless Agreement around the time of the Campaign. (ECF No. 62 at 8.) At oral argument, Blue Bonnet argued Postorino had apparent authority to sign the Hold Harmless Agreement and that he had held himself out as having such authority.

"Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *American Tel. and Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1439 (3d Cir. 1994) (citation omitted). A plaintiff who asserts a claim based on an agent's apparent authority must allege the principal's actions misled the plaintiff into believing the agent acted on the principal's behalf. *Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 618 (D.N.J. 1999). "Whether an agent is cloaked with apparent authority is a factual question." *Id.* at 619 (citing *Gizzi v. Texaco, Inc.*, 437 F.2d 308, 310 (3d Cir. 1971)).

Blue Bonnet argues without reference to any authority that "[t]he actions of Mr. Postorino as an employee of the dealership establish apparent authority." (ECF No. 62 at 6.) An agent's actions cannot establish apparent authority, however. *See Automated Salvage Transport, Inc.*, 106 F. Supp. 2d at 618. Rather, Blue Bonnet must establish Ferraez, as Green Brook's owner and president, misled Blue Bonnet into believing Postorino had apparent authority to sign the Hold Harmless Agreement. Blue Bonnet has not established any reasonable jury must conclude

Ferraez's actions misled Blue Bonnet to such a conclusions. Therefore, summary judgment is not appropriate.

As there are disputes of material fact as to the legitimacy of the Hold Harmless Agreement, Blue Bonnet's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

V. **CONCLUSION**

For the foregoing reasons Green Brook's Motion for Summary Judgment is **GRANTED**; Plaintiff's Motion for Summary Judgment is **DENIED**; Broking's Motion to Certify Class is **DENIED AS MOOT**; and Blue Bonnet's Motion for Summary Judgment is **GRANTED IN PART** as to Plaintiff's claims and **DENIED IN PART** as to Green Brook's claims. Judgment is entered in favor of Green Brook and Blue Bonnet as to Plaintiff's claims. Green Brook's and Blue Bonnet's crossclaims against each other, insofar as each seeks reimbursement from the other for the costs incurred defending themselves from Plaintiff's claims, shall proceed. An appropriate Order will follow.


Date: August 22, 2017 */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**